## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES URQUHART, on behalf of himself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>      v.<br><br>CAE OXFORD AVIATION ACADEMY PHOENIX INC. and JETBLUE AIRWAYS CORPORATION,<br><br>                                    Defendants. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff James Urquhart ("Plaintiff") by and through undersigned counsel, brings this action against Defendants CAE Oxford Aviation Academy Phoenix Inc. ("CAE") and JetBlue Airways Corporation ("JetBlue") (collectively, "Defendants") on behalf of himself and all others similarly situated, and makes the following allegations based upon information and belief and attorney investigation, except those allegations relating to Plaintiff himself, which are based upon personal knowledge.

## PRELIMINARY STATEMENT

1.     This class action stems from Defendants' provision of a pilot training school, JetBlue Gateway Select (the "Programme"), that represents to students not only that they can go from zero experience to being a competent pilot, but that students "will become a new hire at JetBlue" by completing the Programme.  Students paid approximately $100,000 for this premium education, including Plaintiff.

2.     Unfortunately for students like Plaintiff, these representations are not true. Defendants do not provide the instruction that they promise in the Programme, and the students Defendants ostensibly train either: (i) consistently flunk out because Defendants' actual instruction

does not live up to Defendants' representations, or (ii) are consistently placed on Flight Training Reviews, meaning that the students were effectively being ushered out of the program without any meaningful recourse and are forced to pay additional amounts to continue the Programme.

3.      Worse, Defendants charge a premium to students for their Programme—far and above what the average flight school charges—based upon the formers' representations that students are receiving a premium education.   But Defendants did not live up to their representations, and Plaintiff and Class Members suffered as a result of paying more for their education than they would have but for Defendants' misrepresentations.

4.      These deficiencies are not unique to the particular Programme Plaintiff attended, but apply to each of the substantially similar programmes CAE offers in conjunction with other airlines.

5.      On behalf of himself and all others similarly situated, Plaintiff brings this action for (i) breach of contract, (ii) unjust enrichment, (iii) fraud, (iv) violation of New York General Business Law ("GBL") § 349, and (v) violation of GBL § 350.

## **PARTIES**

6.      Plaintiff James Urquhart is a resident of the State of Wisconsin and has an intent to remain there, and is therefore a domiciliary of Wisconsin.  Mr. Urquhart was a student enrolled in the Programme between October 2020 and November 2021.

7.      Defendant CAE Oxford Aviation Academy Phoenix Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 5010 East Falcon Drive, Mesa, Arizona 85215.  CAE offers flight training programmes in conjunction with several airlines, including JetBlue, across the United States.

8.      Defendant JetBlue Airways Corporation is a corporation organized under the laws of the State of Delaware with its principal place of business at 27-01 Queens Plaza North, Long Island City, New York 11101.  JetBlue offers the Programme in conjunction with CAE to students across the United States.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

10.      This Court has personal jurisdiction over Defendants because Defendant JetBlue is headquartered in New York and the forum selection clause in the parties' contract requires all disputes to be brought in the courts of New York.

11.      Venue is proper in this District under 28 U.S.C. 1391(b) because the forum selection clause in the parties' contract requires all disputes to be brought in the courts of New York.

## FACTUAL ALLEGATIONS

**I.    CAE's General Representations Regarding Its Training Programmes**

12.      CAE is a manufacturer of flight simulation technologies, which CAE provides to airlines for training.  CAE also provides pilot training programs in coordination with numerous airlines.

13.      On its website, CAE states that "CAE ab initio training programmes are designed to address the broad range of licensing needs found across commercial aviation."  CAE further claims that it

*specialises in training new pilots from zero experience to CPL/ATPL/MPL level*. To complement this core training, CAE also offers a range of training courses to **enhance cadets' skills and qualifications for their chosen pilot career**.  This training can range from the enhancement of jet handling skills to qualification as a flight instructor.[1]

14.     CAE also explains the differences between the Commercial Pilot License ("CPL,") the Airline Transport Pilot License ("ATPL"), and the Multi-Crew Pilot License ("MPL") options:

> ATPL, CPL & MPL: ATPL and CPL can be achieved following an integrated or a modular route. An MPL is only available in the Integrated or "full-time" option.
>
> An MPL **prepares you for guaranteed employment with one specific airline after graduation**. An ATPL or CPL may not come with a secure airline job immediately after graduation, unless it is an airline specific programme or "cadetship."  However, it gives you the opportunity to job search amongst multiple airlines.
>
> As an MPL prepares you for the first officer position with one specific airline, it includes a type rating on a specific aircraft platform operated by the mentoring airline. An ATPL does not always include a type rating. Because an MPL includes a type rating, it typically requires a greater initial investment when compared to an ATPL.  However, it should be noted that with an ATPL, the cost of your type rating is not eliminated, but is simply deferred to when you land your first airline job.[2]

15.     "Integrated" flight training is a full-time program that allows students to fulfill all of their commercial pilot training requirements in about 1 to 2 years.  Such programs are designed for "zero-hour flight time students," and many airlines "prefer graduates from integrated flight school."  "Integrated training is geared up to prepare you for a job as a commercial airline pilot from day one … [t]he training is well structured and the standard is regarded as very high." Integrated training is also typically more expensive.  "Modular" flight training, by contrast, is

---

[1] https://www.cae.com/civil-aviation/become-a-pilot/how-to-become-a-pilot/programme-options/ (emphasis added)

[2] *Id.* (emphasis added).

traditionally cheaper, not full-time, and has students complete their licensing requirements one-by-one rather than all at once.[3]

16.     Regardless of the certification or training program, CAE makes uniform representations about the quality of its programmes.  For instance, CAE tells students they should choose CAE because CAE's "keep current and aftercare programme" helps students "maintain your license/rating validity so you're ready for that all-important first airline job."  CAE likewise represents that its "full-time training programmes are inclusive of our Fleet Standard Assurance Programme, which consists of additional courses that prepare you for a career as an airline pilot by providing soft skill and leadership training."  CAE also states students "will feel both safe and inspired by our instructors, who offer decades of experience in a wide range of professional aviation backgrounds – commercial airline, corporate aviation and military flying."  And CAE notes its "training programmes span the entire life cycle of a professional pilot, so we're able to provide you with the training you require throughout your career, from cadet to captain."[4]

17.     CAE makes these representations as to each of the programmes it offers in conjunction with major airlines, including JetBlue, Southwest, Aeromexico, and American Airlines.[5]

## II.     Defendants' Specific Representations Regarding JetBlue Gateway Select

18.     In 2016, CAE partnered with JetBlue to launch the "JetBlue Gateway Select" programme.  The Programme is an Integrated MPL flight training programme and costs approximately $100,000 in tuition.

---

[3] https://www.flightdeckfriend.com/become-a-pilot/integrated-vs-modular-flight-training/.

[4] https://www.cae.com/civil-aviation/become-a-pilot/why-choose-cae/.

[5] https://www.cae.com/civil-aviation/become-a-pilot/our-pilot-training-programmes/.

19.     The Programme "is an intensive multi-phase program divided between JetBlue University in Orlando and CAE's Flight Academy in Meza, AZ. The program is designed to take future pilots from zero qualifications to being flight deck ready in 3 to 4 years. Once meeting all program requirements, including the FAA's 1,500 flight-hour requirement, pilots will become a new hire at JetBlue.   In total, the JetBlue cadets spend 42 weeks at CAE throughout their program."[6]

20.     Defendants likewise note the Programme "will allow an applicant, if successful, to learn with JetBlue from the beginning and become a JetBlue pilot after completing a rigorous training program."[7]

21.     Specifically, Defendants represent that the Programme:

> will take a more competency-based approach to becoming a professional pilot.  The Program will optimize the training of prospective airline pilots by offering early exposure to multi-crew/multi-engine operations, full-motion simulator training, crew resource management, and threat and error management. Once meeting all program requirements, including the FAA's 1,500 flight-hour requirement, pilots will become a new hire at JetBlue. At that time, graduates will go through the same orientation and six-week instruction that all first officers complete.

22.     When a student enrolls in the Programme, the student is required to sign a "Trainee Training Services Agreement" (the "Agreement") with Defendants.[8]   The Agreement makes additional representations about what Defendants claim to offer in the Programme.

23.     In the Agreement, Defendants again represent that the Programme is "flight school approved to deliver theoretical and practical flight training starting at the single-engine primary

---

[6] https://www.cae.com/about-cae/75-years/customer-spotlight-jetblue-airways/.

[7] https://www.cae.com/civil-aviation/become-a-pilot/our-pilot-training-programmes/jetblue-gateway-select/.

[8] The Agreement is attached as **Exhibit 1**.

(or beginners') level and extending to advanced flight training in both multi-engine and jet aircraft." Agreement at 1.

24.    The Agreement notes where various parts of the Programme will be provided, including a "JetBlue Foundation Course" in Orlando, Florida, and Part 141 and Part 61 instruction in Mesa, Arizona.  Agreement at 3.

25.    Parts 141 and 61 refer to portions of the Federal Aviation Regulations and types of instruction.  "Under Part 141, a flight school must seek and maintain FAA approval for its training curriculum, syllabus and lesson plans, creating a more structured flight training environment. A Part 61 training environment is less strict, and leaves an instructor with more flexibility to change the training program as he sees fit."[9]  The Programme was previously a Part 61 course, but Defendants attempted to certify the Programme as a Part 141 course.

26.    Defendants further represent that "the purpose of the Course is to prepare the Trainee in such a manner that the Trainee can objectively be expected to reach the theoretical and practical proficiency necessary to do the required exams to obtain the License," although CAE gives no guarantee of the same.  Agreement at 17.

27.    Defendants also represent in the course syllabus (the "Syllabus")[10] what materials and facilities will be provided to students who enroll in their program.  These include but are not limited to:

(a)    Ground instructional facilities located at Falcon Field Airport, along with numerous classrooms.  Syllabus at 6-7.

(b)    Flight simulation training devices.  Syllabus at 8.

_____

[9] PART 141 VS. PART 61, https://pea.com/blog/posts/part-141-vs-part-61/.

[10] The Syllabus is attached hereto as **Exhibit 2**.

(c)     Use of Piper Archer aircraft.  Syllabus at 8.

28.     Defendants also designate whether courses will be provided via a flight simulator, dual flight, or solo flight, among other methods.  Syllabus at 11.

29.     The Syllabus also specifies how certain classes in the Programme will be provided.  For instance, a number of the classes specifically state the training device will be an "Aircraft." Syllabus at 18-23, 25-28, 30, 31, 33-38, 40-48, 51.

30.     Notably, in the Agreement, "CAE reserves the right … to vary the content of or otherwise alter any course *provided that such variation does not of itself prevent the Trainee from attaining the standard advertised as attainable under such Course*."  Agreement at 17 (Emphasis added.).

### III.     Defendants Failed To Provide The Programme As Represented To Plaintiff And Class Members

31.     Unfortunately for Plaintiff and other students, Defendants did not live up to their representations when they provided the Programme to Plaintiff and Class Members.

32.     Plaintiff enrolled in the Programme in October 2020, along with seventeen other students.  Plaintiff paid approximately $100,000 for the Programme in tuition and fees, which takes approximately 3.5 years to complete.

33.     From the moment Plaintiff began the Programme, it failed to live up to Defendants' representations.  Among other failures:

(a)     Plaintiff's class was the first year in which the syllabus for the classes was overhauled from providing 250 hours of instruction to 170 hours.  Plaintiff and Class Members were charged the same price for their 170-hour courses as students had been for the 250-hour courses.  Plaintiff and Class Members

were not told of the change in hours until *after* the Programme had already begun.

(b)     Significant portions of the Programme were provided online, including the foundation course that was supposed to be provided in Orlando, and much of the ground school program that was supposed to be provided in person at Mesa.

(c)     Plaintiff and Class Members' instruction at the ground school was not as Defendants represented.  Instead, Plaintiff and Class Members' instruction mostly consisted of watching YouTube videos and reading the Pilot Handbook for Aeronautical Knowledge, which is a free resource.

(d)     Plaintiff and Class Members were not actually taught material, but instead instructed to purchase a supplement to pass written exams that consisted of simply memorizing the right answer to a question.

(e)     When Plaintiff and Class Members struggled in their education, they were placed on "Flight Training Review" without being told and without a clear set of standards governing when a student is placed on "Flight Training Review."  Thus, neither Plaintiff nor Class Members knew they were in jeopardy of failing out until it was too late.

34.     None of these aspects were represented to Plaintiff and Class Members at the time of contracting for the Programme in October 2020.  Instead, Defendants made these changes on the fly in response to the COVID-19 pandemic.  And while Defendants claim later versions of their syllabus meets FAA requirements for online delivery, this was not the case with Plaintiff and the Class Members' education.  Further, even if the syllabus was approved by the FAA, that does

not mean Defendants delivered FAA-appropriate education or lived up to their representations to the FAA.

35.     While Defendants reserved the right to alter the content of the course, they were prohibited from doing so if the changes prevented students "from attaining the standard advertised as attainable" through the Programme.  Agreement at 17.  But the changes did prevent students from achieving this standard.

36.     Specifically, approximately 30-40% of Plaintiff's class failed out of the Programme due to Defendants' failure to provide instruction consistent with its representations.  Similarly, in the graduating class after Plaintiff's, twenty of the twenty-six students were placed on Flight Training Review prior graduation, meaning that they were slowly being ushered out the door.

37.     These statistics are not the fault of the students, but Defendants' failure to live up to its end of the bargain.  Indeed, the JetBlue Flight Lead at the time messaged his class after being told of these issues, and informed Plaintiff and his classmates that the way "the ground school is being conducted [] is not the intended curriculum and is unacceptable."  Further, the instructor noted that for those students "feel[ing] flustered regarding the content, just know that this isn't any indication of your ability but rather an unusable study environment."

38.     In short, Defendants' actual education does not live up to their representations because, among other things:

> (a)     Defendants' Programme was allegedly designed to allow students with zero experience to become certified pilots, and yet, the students most likely to fail out of the Programme were those with zero experience due to Defendants' failure to provide the represented education;

(b)    Students were not able to attend the foundational course in person in Orlando, and significant portions of the ground school in Mesa were also online;

(c)    Students were not able to use the designated training classroom facilities, as well as limited and often broken flight simulators;

(d)    Students were not provided with the represented instruction for the ground school portion of the Programme, but were instead told to watch YouTube videos and memorize answers for written exams;

(e)    Students were charged the same rate for their 170-hour syllabus as students had been for the previous 250-hour syllabus, and the change was not disclosed to students prior to beginning the Programme; and

(f)    Because Defendants failed to adequately prepare students per Defendants' representations, students were not provided with the conditional job offer with JetBlue and CAE (instructor position)

39.    Defendants' failures have taken a financial toll on Plaintiff and Class Members. Students pay a premium for the Programme based on the representations that the Programme delivers high-quality, hands-on experience that can take prospective pilots from zero experience to a conditional job offer with JetBlue. For instance, Westwind School of Aeronautics, which runs a competitor flight training school in Arizona in conjunction with United Airlines, charges $71,700 for the same Part 141 education that Defendants claim to offer. By comparison, Defendants charge over $100,000.

40.    Further, at various stages of the Programme, students are required to undergo "stage checks" to evaluate their ability to actually fly an airplane. These are similar to road tests in that

a student will pilot a plane with a CAE airman next to them.  Stage checks are "an evaluation not only of student progress, **but also of the instruction received**."[11]  If a student fails the initial stage check—which students are likely to do based on Defendants' failure to provide the bargained-for education—the students must pay a fee to Defendants for additional training and a re-check. Because Defendants failed to provide the represented education, students often failed these stage checks and were forced to pay additional fees to Defendants for more instruction and re-checks.

41.     As noted above, CAE's failure to live up to its representations is not unique but is common to every flight training program it offers.

42.     Plaintiff and Class Members thus suffered financial injury as a result of Defendant's misrepresentations because: (i) Plaintiff and Class Members paid a premium for their education but did not receive the Programme that Defendants represented; and (ii) Plaintiff and Class Members were forced to incur additional expenses as a result of Defendants' failure to provide the Programme as advertised.

## CLASS ALLEGATIONS

43.     Plaintiff seeks to represent a class defined as all people who enrolled in a flight training program with CAE from October 2020 through present and paid tuition for the same (the "Class").  Specifically excluded from the Class are Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's

---

[11] https://www.aopa.org/training-and-safety/flight-schools/flight-school-business/newsletter/2019/april/15/stage-checks-part-two (emphasis added).

immediate family.

44.    Plaintiff also seeks to represent a subclass consisting of Class Members who enrolled in the JetBlue Gateway Select programme from October 2020 through present and paid tuition for the same (the "Subclass")

45.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

46.    **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are dozens of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendants and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

47.    **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class Members.   These common legal and factual questions include, but are not limited to, the following:

(a)    whether Defendants accepted money from Class and Subclass Members in exchange for the promise to provide services;

(b)    whether Defendants have provided the services for which Class and Subclass Members contracted;

(c)    whether Class and Subclass Members are entitled to a refund for that portion of the

tuition that was contracted for services that Defendants did not provide; and

(d)     whether Defendants are liable to Plaintiff, the Class, and the Subclass for unjust enrichment.

48.     **Typicality.**  Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendants' wrongful conduct as set forth herein.  Further, there are no defenses available to Defendants that are unique to Plaintiff.

49.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Class and Subclass.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation and aviation law, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

50.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendants.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and

comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

51.　In the alternative, the Class and Subclass may also be certified because:

(a)　the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b)　the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)　Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
### Breach Of Contract
### (On Behalf Of The Class And Subclass)

52.　Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

53.　Plaintiff brings this claim on behalf of himself and the members of the Class and Subclass against Defendants.

54.　Plaintiff and Subclass Members, on the one hand, and Defendants, on the other, entered into a contractual relationship where Plaintiff and Subclass Members would provide

payment in the form of tuition and fees, and Defendants, in exchange, would provide the Programme in accordance with the representations set forth on Defendants' websites, the Agreement, and the Syllabus.

55.     Similarly, Plaintiff and Class Members, on the one hand, and CAE, on the other, entered into a contractual relationship where Plaintiff and Class Members would provide payment in the form of tuition and fees, and CAE, in exchange, would provide the flight training programs in accordance with the representations set forth on CAE's website and the various agreements and syllabi reached with Plaintiff and Class Members.

56.     Defendants have failed to provide the contracted for services and has otherwise not performed under the contract as set forth above.

57.     Defendants have retained monies paid by Plaintiff and the Class and Subclass for the Programme and similar flight training programs, without providing Plaintiff and the Class and Subclass the benefit of their bargain.

58.     Plaintiff and members of the Class and Subclass have suffered damage as a direct and proximate result of Defendants' breaches, including but not limited to being deprived of the education, experience, and services to which they were promised and for which they have already paid.

59.     As a direct and proximate result of Defendants' breaches, Plaintiff, the Class, and the Subclass are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendants for services that Defendants failed to deliver.

## COUNT II
**Unjust Enrichment**
**(On Behalf Of The Class And Subclass And In The Alternative)**

60.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

61.     Plaintiff brings this claim on behalf of himself and the members of the Class and Subclass against Defendants.

62.     Plaintiff and members of the Class conferred a benefit on CAE in the form of monies paid for the flight training programs in exchange for the provision of the flight training programs as advertised.

63.     Further, Plaintiff and members of the Subclass conferred a benefit on Defendants in the form of monies paid for the Programme in exchange for the provision of the Programme as advertised.

64.     Defendants voluntarily accepted and retained these benefits by accepting payment.

65.     Defendants have retained these benefits, even though, as outlined above, Defendants failed to provide the education, experience, and services for which the tuition and fees were collected, making Defendants' retention unjust under the circumstances.

66.     Defendants' services were not provided and/or have diminished in value.

67.     It would be unjust and inequitable for Defendants to retain the benefits conferred by Plaintiff and Class and Subclass Members.

68.     Defendants should be required to disgorge all profits resulting from such benefits and establish a constructive trust from which Plaintiff and Class and Subclass Members may seek restitution.

## COUNT III
### Fraud
### (On Behalf Of The Class And Subclass)

69.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

70.     Plaintiff brings this claim individually and on behalf of the proposed Class and Subclass against Defendants.

71.     Defendants mispresented material facts to Plaintiff and members of the Class and Subclass regarding the nature of the Programme and other CAE flight training schools, as outlined above.

72.     Defendants had a duty to disclose material facts to Plaintiff and the Class and Subclass given their relationship as contracting parties and intended students at the Programme and other CAE flight training schools.  Each student entered into a training service agreement with CAE and the partner airline, just as Plaintiff entered into the Agreement with Defendants.

73.     Defendants knew or should have known that the flight training programs offered during the class period did not match up to Defendants' representations.  CAE designed the syllabi for its flight training schools in conjunction with each partner airline, including JetBlue, and thus, each Defendant had control over the course offerings and any changes to the course offerings. Further, Defendants were aware of failure rates related to the Programme and other flight training schools, and any complaints by students or even instructors related to the education being offered.

74.     During the class period, Plaintiff and members of the Class and Subclass were enrolled in the Programme or other flight training schools.  When Plaintiff and members of the Class and Subclass paid tuition for the Programme or other flight training schools, they were not aware that the Programme or other flight training schools would not be provided as advertised.

75.     Defendants failed to discharge their duty to represent the nature of their Programme or other flight training schools truthfully.

76.     In so misrepresenting these material facts to Plaintiff and the Class and Subclass, Defendant intended to trick Plaintiff and the Class and Subclass into paying money for the Programme and other flight training schools that would not be provided as advertised, and in fact, would be of much lesser quality than the education Defendants promised Plaintiff and the Class and Subclass would receive.

77.     Plaintiff and the Class and Subclass reasonably relied on Defendants' representations insofar as they would not have paid tuition for the Programme and other flight training schools provided by CAE had they known the Programme and other flight training schools would not be provided as advertised, and Plaintiff and the Class and Subclass would not receive the education and benefits advertised by Defendants.

78.     As a direct and proximate cause of Defendants' fraudulent misrepresentations, Plaintiff and members of the Class and Subclass suffered damages in the amount of monies paid for the Programme and other flight training schools.

79.     As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

**<u>COUNT IV</u>**
**Violation Of New York GBL § 349**
**(On Behalf Of The Subclass)**

80.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

81.     Plaintiff brings this claim individually and on behalf of the proposed Subclass against Defendants.

82.     GBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

83.     In its provision of services throughout the State of New York, Defendants conduct business and trade within the meaning and intendment of New York's General Business Law § 349.

84.     Plaintiff and members of the Subclass are consumers who entered into contractual relationships with Defendants for their personal use.

85.     The Agreement states it shall "be governed and interpreted in accordance with the laws of the State of New York."  Further, JetBlue's offices are in New York.  Accordingly, out-of-state plaintiffs have standing to sue Defendants under GBL § 349.

86.     By the acts and conduct alleged herein, Defendants have engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting the features and facilities that would be available to students who enrolled in the Programme.

87.     The foregoing deceptive acts and practices were directed at consumers.

88.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the features of the education Plaintiff and Subclass Members expected to receive and were meant to induce consumers to enter transactions with Defendants.

89.     By reason of this conduct, Defendants engaged in deceptive conduct in violation of GBL § 349.

90.     Defendants' actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the Subclass have sustained from having paid tuition and fees to Defendants in exchanged for the falsely represented Programme.

91.     As a result of Defendants' violations, Plaintiff and members of the Subclass have suffered damages because: (a) they would not have paid tuition and fees to Defendants, or would have paid significantly less, had they known the Programme would not be provided as advertised; (b) they did not receive the benefit of the bargain per Plaintiff and Subclass Members' Agreement with Defendants.

92.     On behalf of himself and other members of the Classes, Plaintiff seeks to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT V
### Violation Of New York GBL § 350
### (On Behalf Of The Subclass)

93.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

94.     Plaintiff brings this claim individually and on behalf of the proposed Subclass against Defendants.

95.     GBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

96.     Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

97.     Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way, which constitutes false advertising in violation of GBL § 350.

98.     Defendants' false, misleading, and deceptive statements and representations of fact were and are directed to consumers.

21

99.     Defendants' false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

100.    Defendants' false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

101.    As a result of Defendants' false, misleading, and deceptive statements and representations of fact, Plaintiff and the Subclass have suffered and continue to suffer economic injury.

102.    As a result of Defendant's violations, Plaintiff and members of the Subclass have suffered damages because: (a) they would not have paid tuition and fees to Defendants, or would have paid significantly less, had they known the Programme would not be provided as advertised; (b) they did not receive the benefit of the bargain per Plaintiff and Subclass Members' Agreement with Defendants.

103.    On behalf of himself and other members of the New York Subclass, Plaintiff seeks to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, seeks judgment against Defendants, as follows:

(a)     For an order certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class and Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

(b)     For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

(c)     For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: June 22, 2022                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Max S. Roberts*
        Max S. Roberts

Max S. Roberts
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*pro hac vice* app. forthcoming)
1990 N. California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**SCHULTE BOOTH, P.C.**
Robert D. Schulte (*pro hac vice* app. forthcoming)
14 N. Hanson Street
Easton, MD 21601
Telephone: (410) 822-1200
Facsimile:  (410) 822-1299
E-Mail: rschulte@schultebooth.com